TAIYO AMERICAS, INC., Plaintiff,

v.

HONEY TRANSPORT, INC., Seafood Haven, Inc. and Vernon West, Defendants.

No. 78 Civ. 414 (RLC).

United States District Court, S. D. New York.

Feb. 1, 1979.

---

Sage, Gray, Todd & Sims, New York City, by Francis X. Sexton, Jr., and William J. Royal, Jr., New York City, for plaintiff.

Townsend, Rabinowitz, Pantaleoni & Valente, New York City, by Francis L. Valente, Jr., New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

This case concerns the imposition of liability for the loss of a cargo of frozen shrimp. The plaintiff shipper, Taiyo Americas, Inc. ("Taiyo"), has asserted four causes of action against the parties involved in transporting the goods. The motions currently before the court involve the single federal claim, which is based on the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11). Taiyo has sought summary judgment on this claim against Honey Transport, Inc. ("Honey"), the party that contracted directly with Taiyo to transport the shrimp. Honey, in turn, has moved to dismiss the federal cause of action on the ground that the shipment in question was exempt from the provisions of the Carmack Amendment. Implausible as it seems upon first inspection, there is indeed a "shrimp exception" to the Carmack

Amendment, and the defendant's motion to dismiss this cause of action is therefore granted. Accordingly, plaintiff's summary judgment motion is denied, but its remaining claims are unaffected by this decision.

*Background*

In November, 1975, Taiyo purchased a quantity of shrimp in Biloxi, Mississippi. By oral agreement, Taiyo hired Honey to ship the shrimp from Mississippi to several of Taiyo's customers in the Northeast. Honey discovered that it had no trucks available to perform the contract, and it engaged another defendant, Seafood Haven, Inc. ("Seafood Haven") to make the actual shipment.

In accordance with arrangements made by Honey, the driver for Seafood Haven, Vernon West, picked up the shipment from a freezer warehouse in Biloxi, where it was stored in Taiyo's name. Upon receipt of the goods, the driver signed several straight bills of lading, one for each of the customers who were to take delivery. It is unclear who issued the bills of lading, but Honey was designated as the carrier on each of them.

The driver then set out on his route, making two deliveries before arriving in New York. Then, while the truck was parked in Manhattan, it was broken into and a large amount of the shrimp was stolen. The driver then continued on his route and delivered the remaining shrimp. Taiyo subsequently presented claims for its losses to Honey, but Honey has refused to pay both because it denies liability and because it disputes Taiyo's calculation of the magnitude of the losses.

*Discussion*

The parties disagree over the applicability of the Carmack Amendment to the facts of this case. Honey contends that truckers transporting certain classes of goods including agricultural products and seafood are exempt from the provisions of the Amendment. Taiyo, on the other hand, argues that the exception cited by Honey only ex-

empts truckers carrying such goods from certain "housekeeping" regulations, not from the liability imposed by the Amendment. In support of this contention, Taiyo points out that the exemption by its terms applies only to regulations in one part of the Interstate Commerce Act, while the Carmack Amendment appears in a different part of the Act.

A brief analysis of the relevant legislative history is necessary for an understanding of the issues involved in this case.[1] In 1906, Congress added the Carmack Amendment to the Interstate Commerce Act. The Amendment imposes almost absolute liability on an initial common carrier for damage that occurs to a shipment in interstate commerce. Congress intended the Amendment to relieve shippers of the hardship involved when the initial carrier could escape liability by contending that the damage occurred after the shipment had left its control and was within the dominion of another carrier. Prior to enactment of the Amendment, shippers had been faced with the prospect of a succession of lawsuits and the possibility of inconsistent verdicts. When it was passed, the Amendment applied to all carriers under the Act, defined as "all pipe-line companies; express companies; sleeping-car companies; and all persons, natural or artificial, engaged in such transportation of aforesaid as common carriers for hire." 49 U.S.C. § 1(3).

In 1935, Congress passed the Motor Carrier Act, which is now codified as part of the Interstate Commerce Act at 49 U.S.C. § 301 et seq. In essence, this legislation extended many of the regulations that already covered railroad and pipeline companies and made them applicable to truckers as well. This was part of a general effort to provide equal treatment for all modes of transportation. C. Fulda, Competition in the Regulated Industries: Transportation 112 (1961). Significantly, the Motor Carrier Act specifically incorporated the Carmack Amendment. 49 U.S.C. § 319.

At the time of passage, the Motor Carrier Act had a general definition of the carriers that it covered. 49 U.S.C. § 303(a)(14). However, it also included the agricultural exemption which is at the heart of the debate between the parties in the instant case. 49 U.S.C. § 303(b)(6) reads in pertinent part:

> Nothing in the chapter . . . shall be construed to include . . . (6) motor vehicles used in carrying property consisting of . . . fish (including shell fish . . .).

This exemption was the result of extensive lobbying by farmers and fishermen who sought to avoid the higher prices that would accompany the regulation of transportation. C. Fulda, supra, at 107, 111–14.

The structure of this statutory scheme compels the conclusion that the exemption does apply to this case and therefore relieves the defendant of liability under the Carmack Amendment. Plaintiff may be correct that the exemption relates only to the chapter of the Motor Carrier Act in which it appears. Nevertheless, the Carmack Amendment is applicable to motor carriers in the first place precisely because it is incorporated by reference in that same chapter. 49 U.S.C. § 319.

This conclusion that agricultural and fishery products are exempt from more than merely the housekeeping provisions of the Motor Carrier Act is consistent with the legislative history of the exemption. "The

---

1. Very few cases have dealt with this question. In a case cited by the plaintiff, *Thousand Springs Trout Farms v. IML Freight, Inc.*, 558 F.2d 539 (9th Cir. 1977), the court did affirm a decision that found a motor carrier liable under the Carmack Amendment despite the fact that it was transporting a cargo falling within the exemption. However, that case is entitled to little weight since the parties did not raise, nor did the court address, the question of the exemption. By contrast, three cases decided by state courts in Texas all concluded that the Carmack Amendment did not apply to a motor carrier where an exempt shipment was involved. *A. J. Tebbe & Sons Co. v. Brown Express*, 14 Federal Carriers Cases ¶ 81,348 (Tex.Sup.Ct.1960); *Strickland Transportation Co. v. Wagner*, 16 Federal Carriers Cases ¶ 81,598 (Tex.Ct.Civ.App.1963); *Strickland Transportation Co. v. Brown Express*, 13 Federal Carriers Cases ¶ 81,265 (Tex.Ct.Civ.App.1959).

exemption of motor vehicles carrying 'agricultural (including horticultural) commodities (not including manufactured products thereof)' was designed to preserve for the farmers the advantage of low-cost motor transportation." *East Texas Motor Freight Lines, Inc. v. Frozen Food Express*, 351 U.S. 49, 51, 76 S.Ct. 574, 576, 100 L.Ed. 917 (1956). Regulation threatened to increase the costs of transportation by motor carrier as it had with rail transport. C. Fulda, *supra*, at 107. Thus, it is not surprising that the exemption by its terms applies to all regulations except those regarding safety. *Ibid.*

Had Congress so wished, it could have written in an exception to the exemption, so that motor carriers exempt from other regulations would nevertheless be covered by the Carmack Amendment. Congress made no such exception. Rather, while permitting farmers to use non-regulated truckers at lower rates, Congress relegated farmers to state law remedies when goods being transported by truck are damaged or lost. Farmers thus forego the benefits of regulation at the same time that they are relieved of its costs. The exemption, then, applies to the Carmack Amendment, and plaintiff's federal cause of action must be dismissed.

IT IS SO ORDERED.