# United States Court of Appeals
## For the First Circuit

No. 11-1101

MARKEL AMERICAN INSURANCE COMPANY,
Plaintiff,

v.

MICHAEL DÍAZ-SANTIAGO; OMAYRA RODRÍGUEZ-SORRENTINI;
MDS CARIBBEAN SEAS LIMITED,
Defendants, Appellants,

v.

BLUE WATERS INSURERS CORP.; SEGUROS JAVIER CALDERÓN, INC.;
LUIS F. PADILLA-GONZÁLEZ,
Defendants,

v.

FIRSTBANK OF PUERTO RICO,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before
Torruella, Stahl, and Thompson,
Circuit Judges.

Laura Maldonado Rodríguez, on brief for appellants.
Cristina Belaval Burger and Martínez Odell & Calabria, on
brief for appellee.

March 16, 2012

**TORRUELLA, Circuit Judge**.  Defendant-Appellant Michael Díaz-Santiago ("Díaz-Santiago")[1] appeals the district court's grant of summary judgment to Appellee FirstBank of Puerto Rico ("FirstBank").  Markel Am. Ins. Co. v. Díaz-Santiago, No. 09-1672CCC, 2010 WL 3982292 (D.P.R. Sept. 30, 2010).  For the reasons stated herein, we affirm the district court's decision.

## I.  Background

On October 8, 2008, MDS Caribbean Seas Limited ("MDS"), a company that Díaz-Santiago incorporated under the laws of the British Virgin Islands, purchased a vessel, the "Black Sea."  That same day, MDS executed a promissory note in favor of FirstBank, which it secured by a preferred ship mortgage (the "Preferred Ship Mortgage" or "Mortgage"), as a form of payment guarantee to FirstBank.  Also on October 8, Díaz-Santiago and his wife expressly guaranteed MDS's compliance with the terms of the promissory note and Preferred Ship Mortgage by executing and sending to FirstBank a continuing letter of guaranty, jointly and severally binding themselves to the amount owed should the vessel owner, MDS, default.

---

[1]  Díaz-Santiago has been the principal appellant throughout the course of this dispute.  Other appellants to this action include Díaz-Santiago's wife and business partner, Omayra Rodríguez-Sorrentini, and their company, MDS Caribbean Seas Limited.  For purposes of this appeal, we refer to all appellants as, "Díaz-Santiago."

Pursuant to the clear terms of the Preferred Ship Mortgage, MDS, as the owner of the vessel, was required to "keep the vessel fully and adequately insured . . . in at least the amount of the unpaid principal balance of this Mortgage . . . ." Stated differently, MDS was contractually obligated to insure the Black Sea to protect FirstBank's position as a loss payee. The Mortgage additionally provided in the section entitled, "Default," that MDS would be liable for any advances, expenditures, or costs that FirstBank incurred for, among other reasons, defending suits related to the Preferred Ship Mortgage and promissory note. The provision states as follows:

> 5. All advances and expenditures which [FirstBank] in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by [FirstBank] because of defaults, shall be repaid by Owner [MDS] on demand with interest at the same interest rate provided for in the Promissory Note, the payment thereof secured hereby, and until so paid shall be a debt due from Owner [MDS] to [FirstBank] secured by the lien hereof. [FirstBank] shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner [MDS] of any obligation or default thereto.

(Emphasis added.)

Accordingly, Díaz-Santiago obtained insurance for the vessel. On October 7, 2008, he prepared marine insurance application materials and submitted them to Blue Waters Insurers, Corp. ("Blue Waters"), an underwriting agent for various insurers,

including Markel American Insurance Company ("Markel"). Markel, via Blue Waters, issued a marine insurance policy (the "Policy") to Díaz-Santiago in his name based on the information he had provided. Notably, one of Díaz-Santiago's submitted materials stated that he was the specific owner of the Black Sea, and not MDS, as was actually stated in the vessel purchase materials.

In early March 2009, the Black Sea and its owners entered rough waters. The U.S. Customs and Border Protection ("CBP") seized the vessel as part of a drug enforcement action.[2] The search and seizure of the vessel caused it to suffer a series of damages, significantly decreasing its estimated value.[3] On April 7, 2009, the CBP notified FirstBank of the vessel's seizure and advised FirstBank of its rights pertaining to the ship.

FirstBank, seeking to protect its interest in the vessel, took action to secure the Black Sea's release. Specifically, it initiated an administrative forfeiture proceeding before the CBP; it also intervened in the subsequent criminal case and obtained a

---

[2] None of the parties in this dispute were involved in the subsequent criminal actions concerning the vessel. Details as to the legal proceedings concerning this seizure are not relevant for purposes of this appeal.

[3] When MDS executed the promissory note for FirstBank, the vessel's value was estimated at $1,212,000.00. Following the CBP's seizure of the Black Sea, its value was estimated to have decreased to $800,000.

voluntary dismissal of the indictment against the vessel.[4]  It then submitted a claim to Markel on July 1, 2009 requesting payment under the Policy for "the loss of the vessel including, without limitation, the value of the Bank's collateral, legal fees incurred in attempting to secure its release, as well as any applicable costs and interests." After investigating the claim, Markel denied it on July 9, 2009, offering two grounds for its denial of FirstBank's payment request.

First, it asserted that the Policy was void ab initio because Díaz-Santiago had made material misrepresentations during the marine insurance application process, i.e., he declared himself as the owner of the vessel, when in fact all paperwork concerning the Black Sea's purchase identified MDS as the insured vessel's owner.  Second, Markel noted that the Policy's "Use of Your Yacht" provision specifically prohibited the insured yacht's usage for illegal purposes.  That same day, Markel notified Díaz-Santiago that the Policy had been declared null and void and issued him a premiums refund check.

Sailing was hardly smooth for the parties thereafter. On July 15, 2009, Markel filed a Complaint for declaratory judgment against Díaz-Santiago and FirstBank, seeking a determination that

---

[4]  According to the record, the criminal case in which FirstBank intervened and obtained the voluntary dismissal of the indictment was United States v. Andújar-Aponte, Crim. No. 09-096 (D.P.R. 2009).

-5-

the Policy was void due to Díaz-Santiago's misrepresentation or, alternatively, that the Policy did not provide coverage to either Díaz-Santiago or FirstBank for the alleged losses resulting from the vessel's seizure. On September 28, 2009, FirstBank filed its Answer and Counterclaim against Markel; filed a Crossclaim against Díaz-Santiago; and filed a Third Party Complaint against, among others, Blue Waters and Díaz-Santiago's wife. On October 9, 2009, FirstBank filed an Amended Third Party Complaint, bringing MDS on board the action.

A series of dispositive motions soon followed -- including Markel's October 23, 2009 motion for summary judgment against Díaz-Santiago and FirstBank, and FirstBank's December 4, 2009 opposition motion and cross-motion for summary judgment -- with FirstBank and Markel predominantly contesting the validity of the Policy. Following this flurry of filings, Markel and Díaz-Santiago filed a Joint Motion for Entry of Judgment by Consent (the "Consent Motion") on March 26, 2010, with Díaz-Santiago, in effect, authoring and signing his own demise in this action.

In the Consent Motion, the parties stated "that the information regarding the identity of the owner of the vessel was a material fact that should have been disclosed to Markel." The parties further sought entry of judgment for Markel, "declaring that the [Policy] was null and void and does not provide coverage for the damages and/or losses related to the [March 2009] seizure

-6-

of the [vessel] by [CBP]."  On April 9, 2010 the district court granted the motion pursuant to its terms.

FirstBank acted swiftly.  Also on April 9, it moved for partial summary judgment against Díaz-Santiago, his wife, and MDS (the "April 9 motion").  FirstBank claimed that Díaz-Santiago's admission that the governing insurance policy was null and void due to his misrepresentation or concealment of material facts to Markel -- i.e., identifying himself as the owner of the vessel, and not MDS -- constituted a breach by MDS of its Preferred Ship Mortgage with FirstBank, which specifically required MDS to "fully and adequately" insure the vessel and to cover all "advances and expenditures" that FirstBank incurred in defending suits related to the Mortgage and promissory note.  Díaz-Santiago failed to file an opposition motion to FirstBank's April 9 motion, and so, on May 4, 2010, FirstBank moved for the district court to treat that motion as unopposed.[5]

That same day, Díaz-Santiago moved to strike FirstBank's April 9 motion for partial summary judgment on the grounds that it did not comply with Local Rule 56 because it did not contain "a separate, short, and concise statement of material facts."  D.P.R. Civ. R. 56.  Specifically, Díaz-Santiago challenged FirstBank's

---

[5]  Although Díaz-Santiago suggests the district court improperly characterized him as having failed to oppose FirstBank's motion, he fails to point us to anything in the record showing such an opposition.  We likewise deem FirstBank's motion unopposed.

decision to incorporate by reference the parties' statements of uncontested material facts that already were on the record from the various motions and cross-motions for summary judgment previously filed in the case, rather than file a separate statement of uncontested facts with the April 9 motion.[6]  Díaz-Santiago also moved for a protective order, requesting that he not "be forced to oppose an [sic] non-compliant motion for summary judgment until Fistbank [sic] files an amended motion complying with Local Rule 56(a) and (b)."  On June 14, 2010, the district court issued an order (the "June 14 order") denying Díaz-Santiago's motions.

On September 30, the district court granted FirstBank's April 9 motion for partial summary judgment and awarded FirstBank $74,512.50 in attorneys' fees for costs and expenses incurred in securing release of the vessel and defending the validity of the Policy (referred to hereinafter as the "September 30 order").  Díaz-Santiago subsequently filed a Rule 59 motion to either alter or amend the court's order, set aside its judgment, or reconsider its opinion.  The court denied Díaz-Santiago's motion on November 30, 2010 (the "November 30 order").  This appeal followed,

---

[6]  Specifically, FirstBank included a footnote in its April 9 motion stating: "Considering that FirstBank already filed a motion requesting summary judgment with regards to the validity of the Policy and that all parties' statements of uncontested facts in support of their respective motions are applicable to the instant motion, FirstBank -- in the interest of judicial economy -- will incorporate them by reference, instead of filing another statement which, for the most part, will restate the previous ones."

with Díaz-Santiago challenging the district court's (1) denial of his motion to strike and/or motion for protective order, (2) grant of summary judgment in favor of FirstBank, and (3) denial of his motion to alter or set aside the grant of summary judgment to FirstBank.

## II.  Discussion

## A.  Denial of Motion to Strike and/or Motion for Protective Order

FirstBank contends, first, that this Court does not have jurisdiction over Díaz-Santiago's challenge to the district court's denial of his motion to strike and/or motion for a protective order (the "strike/protective order motions"), and second, that even if we do, the district court committed no error.  We proceed to the jurisdictional question.

FirstBank hangs its argumentative hat on the fact that Díaz-Santiago's Notice of Appeal does not specifically designate the district court's order denying his strike/protective order motions.  Thus, so the argument goes, Díaz-Santiago failed to provide the requisite notice to either this Court or to FirstBank as to the issues it would be challenging on appeal.  In essence, FirstBank alleges that Díaz-Santiago failed to comply with the requirements of Rule 3(c) of the Federal Rules of Appellate Procedure.

Rule 3(c) provides that a "notice of appeal must . . . designate the judgment, order, or part thereof being appealed."

Fed. R. App. P. 3(c)(1)(B); Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 395 (1st Cir. 1999) (stating "a notice of appeal must specify the order or judgment to which the appeal is addressed"). The Supreme Court has made clear that the rule's requirements, while mandatory and jurisdictional, see Torres v. Oakland Scavenger Co., 487 U.S. 312, 315-17 (1988), should be construed liberally, Smith v. Barry, 502 U.S. 244, 248 (1992). In performing such liberal construction, however, we are aware that "noncompliance" with the rule's mandates "is fatal to an appeal." Id. (additionally stating "[t]his principle of liberal construction does not, however, excuse noncompliance with the Rule," as its "dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review"); Constructora Andrade Gutiérrez, S.A. v. Am. Int'l Ins. Co. of P.R., 467 F.3d 38, 43 (1st Cir. 2006) ("The failure to include a particular issue in a notice of appeal can be fatal to this court's jurisdiction over that issue.").

In assessing whether the Notice of Appeal confers appellate jurisdiction over Díaz-Santiago's claim, "we are cognizant that 'the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal.'" Kotler v. Am. Tobacco Co., 981 F.2d 7, 11 (1st Cir. 1992) (quoting Smith, 502 U.S. at 248). Specifically, we review the notice to determine whether Díaz-

-10-

Santiago's intent to appeal the district court's June 14 order denying his strike/protective order motions was sufficiently manifest so as to provide clear notice to FirstBank. See id. (citing Smith, 502 U.S. at 248); see also Torres, 487 U.S. at 318 (noting that Rule 3(c)'s "specificity requirement" serves to ensure "fair notice" to both the court and opposition regarding an appeal). In conducting this review, we do not examine the notice in isolation, but consider the record in its entirety. See FirsTier Mortg. Co. v. Investors Mortg. Ins. Co., 498 U.S. 269, 276 n.6 (1991); Kotler v. Am. Tobacco Co., 926 F.2d 1217, 1221 (1st Cir. 1990), vacated on other grounds 505 U.S. 1215 (1992) ("In determining whether appellant's notices of appeal . . . sufficiently demonstrated an intent to appeal that order, we are not limited to the four corners of the notices, but may examine them in the context of the record as a whole.").

The Notice of Appeal in this case specifically provides:

> [A]n appeal will be taken to the United States Court of Appeals for the First Circuit, to challenge the order and judgment entered on summary judgment and the subsequent order denying post judgment relief.

On the one hand, a review of the Notice reveals no express reference to the district court's June 14 order denying Díaz-Santiago's strike/protective order motions, a seemingly fatal flaw under Rule 3(c)'s clear provisions. See Fed. R. App. P. 3(c); Poy v. Boutselis, 352 F.3d 479, 486 (1st Cir. 2003) (holding that

-11-

appellant's failure to include an issue in its notice of appeal "is fatal to our jurisdiction"). The only judgment designations contained in Díaz-Santiago's Notice of Appeal are to the district court's September 30 order (granting FirstBank's motion for partial summary judgment) and the court's November 30 order (denying Díaz-Santiago's motion under Rule 59 for alteration or amendment of judgment). The Notice of Appeal's omission of any specific reference to the district court's June 14 order "while, at the same time, designating . . . completely separate and independent order[s] loudly proclaims [Díaz-Santiago's] intention not to appeal from the former [June 14] order." Kotler, 981 F.2d at 11.

On the other hand, we remain mindful that we must construe the Notice of Appeal liberally and look beyond the limited confines of the notice document itself to the record as a whole. A careful review of such record shows that in Díaz-Santiago's motion to alter or set aside the district court's September 30 order, he makes mention of the court's June 14 order denying his strike/protective order motions and specifically cites to the order's docket number. In citing that order, appellant states as follows:

> As expressed by the court, defendants did not oppose the motion for summary judgment, but they did request remedies concerning the response to that motion which were entirely denied. ([Docket No.] 98) Among the remedies requested, defendants requested to be allowed to respond if their requests for protective order were denied. Defendants move for the

-12-

                    court to review the opinion and order issued,
                    and vacate the judgment entered.

(Emphasis added.)

        Díaz-Santiago's Russian nesting doll-esque technique of raising his challenge to the district court's June 14 order within his challenge to the court's September 30 order was not the most express or direct means to highlight for this Court or FirstBank his intention to appeal such judgment. However, while we are somewhat skeptical that Díaz-Santiago's linguistic turn of hand here was sufficient to satisfy Rule 3(c)'s specific designation requirements, we are able to dodge this jurisdictional conundrum. Rather than draw our own conclusions concerning Díaz-Santiago's appellate intent from the record, we "take shelter instead under the familiar principle that where an appeal presents a difficult jurisdictional issue, yet the substantive merits underlying the issue are facilely resolved in favor of the party challenging jurisdiction, the jurisdictional issue may be avoided." Kotler, 926 F.2d at 1221.

        The district court's June 14 order denied Díaz-Santiago's contention that FirstBank's motion for partial summary judgment violated Local Rule 56 because it did not include "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." D.P.R. Civ. R. 56(b). Díaz-Santiago asserts the court's consideration of this

                                    -13-

motion, despite its alleged noncompliance, was improper because all previously submitted motions or statements were "inevitably intertwined with numerous other motions and responses that might or might not have been relevant" to FirstBank's April 9 motion.

We are particularly deferential to a district court's application and interpretation of its own local rules. Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004); see also P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 131 (1st Cir. 2010) ("[I]t is primarily the role of the district court to determine what departures from a local rule may be tolerated."). Here, the record shows that FirstBank's April 9 motion expressly incorporated by reference all parties' statements of uncontested facts that were previously submitted in support of their prior respective motions. One such motion and corresponding statement of uncontested facts included FirstBank's previous cross-motion for summary judgment (filed on December 4, 2009), which was in full compliance with Local Rule 56's requirements. Indeed, in incorporating all prior filed statements of uncontested facts in its April 9 motion, FirstBank made express reference to its December 4 cross-motion for summary judgment and corresponding statement of uncontested facts.

A review of the docket leaves no doubt that the parties here had ample opportunity to flex their motion-practice muscles (of which they took clear advantage), and that, in doing so, the parties consistently asserted substantive facts and arguments that

-14-

did not noticeably vary from one motion to the next.  While we will not speculate as to the district court's reasons for denying Díaz-Santiago's strike/protective order motions, which are unclear from the court's brief order, we see no abuse of discretion in its determination to, at the very least, conserve judicial resources and rely on the ample record before it -- which FirstBank expressly cited to, specifically directed the court, and unequivocally incorporated by reference -- containing similar legal allegations and factual averments throughout.  Local Rule 56 nowhere mandates that a district court deny motions that incorporate matters by reference.  Under the facts of this case, we see no error in the district court's decision to permit such incorporation here.

Díaz-Santiago also challenges FirstBank's subsequent filing of an addendum to its April 9 motion providing the specific attorneys' fees and costs it had incurred in securing the vessel's release and defending the Policy's validity.  He contends that FirstBank's submission of attorney declarations detailing hours worked also constituted a violation of Local Rule 56(b) because "the attorneys' alleged work before administrative agencies or before other judges could not be automatically attributable to defendants in this case."  We find no merit to Díaz-Santiago's cursorily raised argument.

To begin with, we are not convinced that Local Rule 56(b), addressing the filing of uncontested statements of fact, is

-15-

the proper rule on which Díaz-Santiago should be relying. The addendum here was clearly not meant to be included as part of a statement of uncontested facts; rather, it was offered as further support for FirstBank's summary judgment argument that Díaz-Santiago was liable for all costs and attorneys' fees incurred in securing the vessel's release and defending the Policy's validity. See Docket No. 89 at 2 ("As a direct result of MDS's breach of contract, FirstBank is requesting the Honorable Court to grant all costs and attorneys' fees incurred by the latter in securing release of the Vessel . . ., as well as those fees incurred in defending the validity of the policy in the instant case. For this reason, FirstBank hereby files the following declarations . . . to evidence the amount incurred in attorneys' fees to secure the release of the Vessel and to defend the validity of the policy." (emphasis added)).

The addendum consisted of several attorneys' affidavits identifying the specific proceedings on which they worked in the dispute -- all of which consisted of representing FirstBank in the underlying criminal proceedings, its administrative proceeding before the CBP, and in the litigation concerning the Policy's validity. Under the clear terms of the Mortgage, Díaz-Santiago could be held liable for expenses associated with such proceedings, and moreover, for his conceded breach of the terms of the

-16-

agreement. The question of such fees was thus part and parcel of FirstBank's argument in support of summary judgment.

FirstBank's April 9 motion specifically flagged for the court that the addendum setting forth such fees would be swiftly forthcoming; in fact, it was filed approximately five days after the summary judgment motion's filing. While it is unclear why FirstBank did not include the addendum with the summary judgment motion itself, the record shows it was filed soon after, and far in advance of the court's September 30 order granting summary judgment. Tellingly, Díaz-Santiago points us to no local rule or applicable case law establishing that such a supplemental filing of supporting materials, specifically referenced in the original motion, is improper.

We thus again face a question of a district court's application of its own local rules, to which we accord "a special degree of deference - above and beyond the traditional standards of decisionmaking and appellate oversight." In re Jarvis, 53 F.3d 416, 422 (1st Cir. 1995). We find no abuse of discretion in the district court's consideration of the addendum, which contained relevant information to FirstBank's overall summary judgment position.

For these reasons, we reject Díaz-Santiago's challenges to the district court's denial of his strike/protective order motions.

**B. Grant of Partial Summary Judgment and Denial of Motion to Alter or Amend Judgment**

Díaz-Santiago does not clearly set forth his specific arguments as to why the district court should not have granted FirstBank's summary judgment motion. Instead, he inserts his summary judgment challenges in his discussion against the district court's denial of his Rule 59(e) motion to alter or amend judgment. We attempt to parse each argument out, addressing the district court's grant of summary judgment first.

### 1. Partial Summary Judgment Grant

We review the district court's grant of summary judgment de novo. Insituform Tech., Inc. v. Am. Home Assurance Co., 566 F.3d 274, 276 (1st Cir. 2009). To prevail on summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit" under governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); likewise, an issue of fact is genuine if "a reasonable jury could resolve it in favor of either party," Basic Controlex Corp., Inc. v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir. 2000). In determining whether a genuine issue of material fact exists, we construe the evidence in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir. 2004).

Díaz-Santiago points us to nothing in the record that raises a genuine issue of material fact. At most, Díaz-Santiago directs us to the fact that FirstBank allegedly knew the Policy contained a discrepancy as to the Black Sea owner's name (listing Díaz-Santiago as the owner instead of MDS), but still executed the Preferred Ship Mortgage and promissory note in MDS's name despite such knowledge. Specifically, Díaz-Santiago contends that FirstBank received a copy of the Policy -- containing the owner error -- on October 7, 2008, but that the Mortgage and promissory note were not signed with FirstBank until October 8, 2008, the same day Díaz-Santiago signed all documents officially incorporating MDS in the Virgin Islands and purchasing the Black Sea in MDS's name.

In essence, Díaz-Santiago argues that FirstBank held all the cards as of October 8, 2008, should have seen the documents' discrepancies for itself, and either informed Díaz-Santiago of such errors and/or refused to accept the Policy for its material error. Because it did not do so, Díaz-Santiago contends that FirstBank was acting with unclean hands[7] at the time of the Mortgage and

[7] The doctrine of unclean hands is grounded in the maxim that "[h]e who comes into equity must come with clean hands." Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 241 (1933). Pursuant to this doctrine, a claimant may not recover where his "misconduct is directly related to the merits of the controversy between the parties." Dr. José S. Belaval, Inc. v. Pérez-Perdomo, 488 F.3d 11, 15 (1st Cir. 2007) (quoting Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995)). Stated differently, the doctrine will "close[] the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." Precision Instrument Mfg.

-19-

promissory note's execution and should not be rewarded for such actions.

For reasons set forth <u>infra</u> in our Rule 59(e) discussion, we need not address the merits of Díaz-Santiago's unclean hands argument. We therefore examine the record as it stands to assess whether a genuine issue of material fact is present, construing the record and drawing all inferences therefrom in Díaz-Santiago's favor. We conclude that Díaz-Santiago's arguments on appeal are nothing more than a smokescreen to try and artfully evade the writing on the wall, which clearly shows the following:

First, MDS, and not Díaz-Santiago, is listed as the purchaser of the Black Sea vessel. Second, after MDS purchased the Black Sea, it executed a promissory note and Preferred Ship Mortgage in FirstBank's favor, obligating itself to insure the Black Sea to protect FirstBank's interest as a loss payee, and to pay for any costs incurred by FirstBank in defending suits related to the aforementioned agreements. Third, Díaz-Santiago and his wife signed a continuing letter of guaranty, confirming for FirstBank that they would jointly and severally assume any costs owed under the agreements should MDS default. Fourth, when Díaz-Santiago, on behalf of MDS, obtained the requisite insurance for the Black Sea from Markel, he misrepresented himself as the owner of the vessel, and not MDS. Fifth, following the Black Sea's

---

Co. v. <u>Auto. Maint. Mach. Co.</u>, 324 U.S. 806, 814 (1945).

-20-

seizure, FirstBank incurred various costs and expenses seeking to secure its release, but when it submitted its claim to Markel (the vessel's insurer), Markel denied the claim due to the material owner identification error in the insurance papers. Lastly, hammering the final nail into the coffin, Díaz-Santiago and Markel filed a Consent Motion with the court affirming that the vessel's insurance policy was null and void and did not provide coverage for any damages or losses related to the Black Sea's seizure. Stated differently, Díaz-Santiago conceded that MDS had failed to fulfill its side of the bargain with FirstBank by not obtaining valid insurance for the vessel, and had breached one of its contractual obligations under the Preferred Ship Mortgage.

Puerto Rico law makes clear that contracts shall be binding, regardless of the form in which they were executed, "provided the essential conditions required for their validity exist." P.R. Laws Ann. tit. 31, § 3451. Where the terms of a contract are clear, leaving no doubt as to the contracting parties' intentions, such contract will be observed according to "the literal sense of its stipulations." Id. § 3471. It is widely accepted that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Id. § 2994. Where a party fails to uphold or abide by the contract's essential obligations, such failure will be deemed a breach of the contract. See

<u>Dantlzer, Inc.</u> v. <u>Lamas-Besos</u>, No. 10-1004(PG), 2010 WL 2572618, at *3 (D.P.R. June 22, 2010) (stating that the elements of a cause of action for breach of contract under Puerto Rico law include "1) a valid contract and 2) a breach by one of the parties to the contract"); <u>Torres</u> v. <u>Bella Vista Hosp., Inc.</u>, 523 F. Supp. 2d 123, 152 (D.P.R. 2007).

No party has disputed the validity of the contractual agreements between FirstBank and Díaz-Santiago, nor does the record reveal any facts suggesting their possible voidability. Pursuant to the express terms of the Preferred Ship Mortgage, MDS was required to "keep the vessel fully and adequately insured . . . in at least the amount of the unpaid principal balance of the Mortgage," and would be held liable for any advances or expenditures that FirstBank incurred in defending suits related to the promissory note or Mortgage. Regarding the former obligation, Díaz-Santiago sealed his fate upon filing the Consent Motion with Markel, establishing a breach of his contractual obligation to FirstBank to obtain and maintain insurance on the Black Sea.[8]

---

[8] Indeed, had the Policy been valid, FirstBank's costs as a loss payee in securing the vessel's release presumably would have fallen to Markel the insurer, as the Policy specifically provided: "[i]n the event of a covered loss to property, you must protect the property from further loss and make every effort to recover it. We shall pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under PROPERTY COVERAGE . . . ."

Regarding the latter obligation, it is clear that MDS, through the Mortgage, and Díaz-Santiago, via the continuing letter of guaranty, contractually bound themselves to reimburse FirstBank for any costs it incurred in defending suits related to the Mortgage or promissory note. FirstBank has more than satisfied its burden of establishing such costs.

Specifically, FirstBank initiated an administrative proceeding before the CBP, seeking to foreclose on the vessel's Mortgage when MDS defaulted in payments following the Black Sea's seizure. It then intervened in the subsequent criminal case, obtaining the voluntary dismissal of the indictment against the vessel. Lastly, it actively participated in the aggressive litigation that ensued amongst the parties concerning the Policy's validity, which concluded with Díaz-Santiago and Markel's filing of the Consent Motion. The various suits in which FirstBank was involved clearly fall within the Preferred Ship Mortgage's "Default" provision, stating that MDS will be liable for all advances and expenditures that FirstBank may incur in "defense of suits . . . related [to the Mortgage] or to [the promissory] note (emphasis added)." Thus, pursuant to the clear terms of the Preferred Ship Mortgage, MDS -- or if MDS is unable to pay, then Díaz-Santiago and his wife -- may be held liable for FirstBank's shown costs for defending such suits.

-23-

Stated most simply, FirstBank upheld its end of the bargain, and now Díaz-Santiago/MDS must do the same. We thus affirm the district court's grant of summary judgment to FirstBank, and its award of attorneys' fees, costs, and expenses arising from FirstBank's procured release of the Black Sea and defense of the policy's validity.

## 2. Motion to Alter or Amend Judgment

Charging once more unto the breach, Díaz-Santiago argues that the district court wrongly denied his Rule 59(e) motion in which he asserted that FirstBank violated the equitable doctrine of unclean hands when it permitted the execution of the Mortgage and promissory note in MDS's name despite knowing that the Policy already listed Díaz-Santiago as the vessel owner. Because FirstBank produced the discrepancy in the underlying documents, Díaz-Santiago asserts that FirstBank "was not entitled to relief," and "the judgment entered represents clear legal error and a manifest injustice" warranting an amendment or setting aside of the judgment pursuant to Federal Rule of Civil Procedure 59(e).

This Court reviews the district court's denial of post-judgment relief under Rule 59(e) for abuse of discretion. Williams v. Poulos, 11 F.3d 271, 289 (1st Cir. 1993) ("The decision to grant or deny a Rule 59 motion is committed to the wide discretion of the district court and must be respected absent abuse."); Fernández v. Leonard, 963 F.2d 459, 468 (1st Cir. 1992). Generally, to prevail

-24-

on a Rule 59(e) motion, the moving party "must either clearly establish a manifest error of law or must present newly discovered evidence." F.D.I.C. v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992); see also Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (acknowledging four grounds for granting a Rule 59(e) motion: "manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, and an intervening change in controlling law.") (citing 11 C. Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)). Notably, a party moving for Rule 59(e) relief may not repeat arguments previously made during summary judgment, Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008), nor may it present new arguments on a Rule 59(e) if such arguments "could, and should, have been made before judgment issued." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) (quoting F.D.I.C., 978 F.2d at 16).

A review of the record confirms that Díaz-Santiago raised his unclean hands argument for the first time in his Rule 59(e) motion. As we have repeatedly admonished parties, such motion is not the place to present arguments that could, and should, have been raised before the court's pulling of its judgment trigger. Id. Given the amount of motion practice that took place amongst the parties in this case, along with the similar nature of the parties' claims as to their respective liabilities under the

various contractual agreements at issue, we are hard pressed to accept that Díaz-Santiago could not have made his equitable defense argument before the district court entered judgment granting FirstBank's April 9 motion. Díaz-Santiago had repeated opportunities to oppose FirstBank's April 9 motion, and he simply failed to do so. Díaz-Santiago effectively waited until the die was cast to substantively challenge FirstBank's summary judgment motion for the first time. But Rule 59(e) motions "are aimed at <u>re</u> consideration, not initial consideration." <u>Harley-Davidson Motor Co.</u> v. <u>Bank of New Eng.-Old Colony, N.A.</u>, 897 F.2d 611, 616 (1st Cir. 1990). We reject Díaz-Santiago's attempt to ante up and play a new hand when he is long past being a day late and well over a dollar short.

Additionally, neither the Rule 59(e) motion itself nor Díaz-Santiago's arguments on appeal in support of such motion show a manifest error of law or fact, a presentation of newly discovered evidence, or a significant change in governing law. Thus, Díaz-Santiago has failed to show any grounds that, under Rule 59(e), warrant an amendment, alteration, or setting aside of the district court's September 30 order, or any abuse of discretion on the part of the district court in applying Rule 59(e)'s standards. We thus affirm the district court's denial of Díaz-Santiago's Rule 59(e) motion.

### III. Conclusion

Finding no error in the district court's rulings, we affirm.

**Affirmed**.