2012 DNH 173

**AMERISWISS TECHNOLOGY, LLC**

v.

**MIDWAY LINE OF ILLINOIS, INC.; and C.H. Robinson Worldwide, Inc.**

**Massachusetts Bay Insurance Company a/s/o Ameriswiss Technology, Inc.**

v.

**C.H. Robinson Worldwide, Inc.**

**Civil No. 11–cv–148–LM.**

United States District Court, D. New Hampshire.

Sept. 27, 2012.

---

Frank J. Weiner, Deutsch Williams Brooks Derensis & Holland PC, Boston, MA, John F. Bisson, Cronin & Bisson PC, Manchester, NH, for Plaintiff.

Fredric Paul Gallin, Methfessel & Werbel, New York, NY, John F. Bisson, Cronin & Bisson PC, Manchester, NH, for Consol Plaintiff.

Wesley S. Chused, Looney & Grossman LLP, Boston, MA, Mary K. Ganz, Ganz Law Office, Seabrook, NH, for Cross Claimant.

Wesley S. Chused, Looney & Grossman LLP, Boston, MA, Mary K. Ganz, Ganz Law Office, Seabrook, NH, Defendant.

### ORDER

LANDYA McCAFFERTY, United States Magistrate Judge.

This case arises out of a single-vehicle accident that destroyed thirteen pieces of machinery owned by Ameriswiss Technology, LLC ("Ameriswiss"). When they were destroyed, Ameriswiss's machines were being trucked to New Hampshire by Midway Line of Illinois, Inc. ("Midway"). Midway had been hired by C.H. Robinson Worldwide, Inc. ("Robinson"), which itself had been hired by Ameriswiss to arrange for the transportation of its machines. Ameriswiss is suing Robinson for negligence (Count I) and breach of contract (Count II). Ameriswiss also asserted a claim against Midway under the federal Carmack Amendment, 49 U.S.C. § 14706, and default has been entered against Midway in favor of Ameriswiss. *See* doc. no. 33. Robinson has asserted a cross claim against Midway for indemnification. Ameriswiss's suit has been consolidated with a three-count subrogation action that was brought by Ameriswiss's insurer, Massachusetts Bay Insurance Company ("MB Insurance"), against Robinson, Midway, and the driver employed by Midway.[1] Before the court is Robinson's motion for summary judgment on both of Ameriswiss's claims and all three of MB Insurance's claims. Ameriswiss has objected; MB Insurance has not. For the reasons that follow, Robinson's motion for summary judgment is granted.

### Summary Judgment Standard

"To prevail on summary judgment, the moving party must show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Markel Am. Ins. Co. v. Díaz–Santiago*, 674 F.3d 21, 29 (1st Cir. 2012) (quoting Fed.R.Civ.P. 56(a)). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Dávila v. Corporación de P.R. Para La Difusión Pública*, 498 F.3d 9, 12 (1st Cir.2007) (quoting *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 7 (1st Cir.2004)). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir.2009) (citations and internal quotation marks omitted).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." *Sánchez–Rodríguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 9 (1st Cir.2012) (quoting *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.2006)). "However, 'a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden.'" *Sánchez–Rodríguez*, 673 F.3d at 9 (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir.2005)). "Rather, the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim." *Sánchez–Rodríguez*, 673 F.3d at 9 (quoting *Soto–Ocasio v. Fed. Ex. Corp.*, 150 F.3d 14, 18 (1st Cir.1998)) (internal quotation marks omitted).

### Background

Robinson has submitted a statement of material facts that meets the requirements of Local Rule 7.2(b)(1). Ameriswiss has not responded by submitting "a short and concise statement of material facts, supported by appropriate record citations, as to which [it] contends a genuine dispute

---

1. In that second action, Robinson asserted cross claims for contribution and indemnification against Midway, but Midway and its driver have been dismissed from that action, without prejudice. *See* doc. no. 39.

exists so as to require a trial." LR 7.2(b)(2). Accordingly, "[a]ll properly supported material facts set forth in [Robinson]'s factual statement [document no. 41–3] shall be deemed admitted." *Id.* Based upon the application of Local Rule 7.2(b)(2), the following facts, drawn from Robinson's statement, are undisputed.

Ameriswiss, which is headquartered in Holderness, New Hampshire, buys used Escomatic machines and reconditions them for resale. On September 20, 2010, Ameriswiss purchased eleven used Escomatic machines, along with a grinding machine and an optical projector, all of which were located in Morrison, Illinois. For the thirteen machines, it paid $40,000, plus a twelve-percent commission, for a total outlay of $44,800.

Ameriswiss then contracted with Robinson to arrange the shipment of its machines from Illinois to New Hampshire. The parties agree that the terms of their contract are expressed in an e-mail from Robinson's Jonathan Dunlop to Ameriswiss's Heidi Luscher that states, in full: "Morrison, IL > Holderness, NH $2600 all inclusive." Def.'s Mot. Summ. J., Dunlop Aff., Ex. 3 (doc. no. 41–5), at 20. After Ameriswiss contracted with Robinson, Robinson engaged Midway to haul the machines. On October 15, the machines were loaded onto one of Midway's trucks. The next day, they were destroyed when the truck was involved in a single-vehicle accident in New York.

Based on the foregoing, Ameriswiss asserts that Robinson is liable for negligence because it breached its duty of care by failing to select a competent carrier to transport the machines, and is liable for breach of contract because it failed to safely transport the machines and failed to secure appropriate insurance for them while they were in transit. MB Insurance, in turn, asserts that Robinson: (1) by virtue of contracting with Midway, is liable for negligently transporting Ameriswiss's machines; (2) breached its duty of care as a common carrier; (3) and breached its duty of care as a bailee.

### Discussion

Robinson moves for summary judgment, arguing that: (1) both of the ordinary negligence claims (Ameriswiss's Count I and MB Insurance's Count I), MB Insurance's common-carrier negligence claim (Count II), and its bailment claim (Count III) are preempted by federal law; (2) even if not preempted, the ordinary negligence and bailment claims fail as a matter of law;[2] (3) Ameriswiss's claim for breach of contract fails as a matter of law; and (4) even if it is liable to Ameriswiss, its liability is limited to $44,800, the amount that Ameriswiss paid for the machines. Ameriswiss disagrees, categorically. As noted, MB Insurance remains on the sidelines.

### A. Robinson's Role

Before mounting its substantive arguments for summary judgment, Robinson devotes several pages of its memorandum of law to what it calls "a threshold issue," Def.'s Mem. of Law (doc. no. 41–1), at 11, namely, whether its actions were those of a transportation broker or those of a motor carrier.[3] Robinson argues that it is be-

---

**2.** Robinson does not appear to argue that MB Insurance's common-carrier negligence claim fails as a matter of law.

**3.** The relevant statute defines "[t]he term 'motor carrier' [to] mean[] a person providing commercial motor vehicle ... transportation for compensation." 49 U.S.C. § 13102(14). That statute defines the term "broker" to

mean[] a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2).

yond genuine dispute [4] that it acted, at all times, as a transportation broker. After asserting that it was a broker rather than a motor carrier, Robinson points out that

[u]nder long-standing principles of transportation law, cargo damage claims against *interstate motor carriers* are determined under the Carmack Amendment to the ICC Termination Act of 1995, 49 U.S.C. § 14706 ("ICCTA"), whereas that statute does not govern (or even mention) brokers in the scheme of interstate cargo loss and damage liability. *Chubb Group of Insurance Companies v. H.A. Transportation Systems, Inc.,* 243 F.Supp.2d 1064, 1068–1069 (C.D.Cal.2002).

Def.'s Mem. of Law (doc. no. 41–1), at 11. Ameriswiss counters by contending that there is a genuine issue of material fact as to whether Robinson was a motor carrier in this case.

In Robinson's view, determining whether it was a transportation broker or a motor carrier "will dictate what law should be applied to Ameriswiss' claims." Def.'s Mem. of Law (doc. no. 41–1), at 11. And, it goes on to cite *Chubb* for the proposition that "the Carmack Amendment [49 U.S.C. § 14706(a)] does not apply to brokers." 243 F.Supp.2d at 1068–69 (citing *Prof'l Commc'ns, Inc. v. Contract Freighters, Inc.,* 171 F.Supp.2d 546, 551 (D.Md.2001); *Indep. Mach., Inc. v. Kuehne & Nagel, Inc.,* 867 F.Supp. 752, 761 (N.D.Ill.1994); *Adelman v. Hub City L.A. Terminal,* 856 F.Supp. 1544, 1547–48 (N.D.Ala.1994)). But, because Ameriswiss does not assert a Carmack Amendment claim against Robinson, it is not clear what Robinson gains by establishing that it was a broker rather than a motor carrier, which leaves the court wondering how Robinson's status is a material fact in the first instance. *See*

*Markel,* 674 F.3d at 29 ("A fact is material if it 'might affect the outcome of the suit' under governing law.") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Accordingly, the court bypasses the question of Robinson's status and moves to Robinson's arguments for summary judgment.

### B. Negligence & Bailment

In Count I of its complaint, Ameriswiss asserts that Robinson "owed [it] a duty to use reasonable [care] in the selection of a carrier to transport [its] property," Compl. (doc. no. 1) ¶ 30, and that Robinson "breached its duty of care ... by failing to choose a trustworthy carrier competent to transport [its] property," *id.* ¶ 31. In Count I of its complaint, MB Insurance asserts that the accident that destroyed Ameriswiss's equipment "was due to the negligence of the defendants in the transportation of the equipment," Compl. (doc. no. 1 in 11–cv–266–JL) ¶ 17, and that "[a]s a dispatcher, CH Robinson is responsible for the acts of its contractors," *id* ¶ 11. In Count II, MB Insurance asserts that defendants breached their duties of care as common carriers. *See id.* ¶ 22. In Count III, MB Insurance asserts that "[d]efendants accepted [Ameriswiss]'s goods for bailment," *id.* ¶ 24, and breached their duties and obligations to return the goods in an undamaged condition, *see id.* ¶¶ 25–26.

Robinson argues that it is entitled to summary judgment on the ordinary negligence claims asserted by Ameriswiss and MB Insurance because there is no evidence that it negligently selected Midway to transport Ameriswiss's machines. It further argues that those claims, along

---

4. "[A]n issue of fact is genuine if 'a reasonable jury could resolve it in favor of either party.'" *Markel,* 674 F.3d at 29–30 (quoting

*Basic Controlex Corp. v. Klockner Moeller Corp.,* 202 F.3d 450, 453 (1st Cir.2000)).

with the claims stated in Counts II and III of MB Insurance's complaint, are all preempted by federal law. Ameriswiss contends that its claims are not preempted, and that genuine issues of material fact preclude summary judgment. Robinson's preemption argument carries the day.

The liability of interstate motor carriers to shippers[5] is governed by federal law. Under what is known as the Carmack Amendment to the Interstate Commerce Act:

> A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States ...

49 U.S.C. § 14706(a)(1).

■ "The Carmack Amendment effectively creates a federal statutory remedy on the bill of lading against both the originating and destination carrier." *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 17 (1st Cir.2003). "To make a prima facie case under the Carmack Amendment, a plaintiff must show 1) delivery to the carrier in good condition; 2) arrival in damaged condition; and 3) the amount of damages caused by the loss." *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 274 (1st Cir.2000) (citing *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137–38, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *D.P. Apparel Corp. v. Roadway Express, Inc.*,

736 F.2d 1, 2 (1st Cir.1984)). "If [a] plaintiff succeeds in establishing [a prima facie case], 'the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.'" *Center v. Roadway Express, Inc.*, Civ. No. 06–11168–DPW, 2008 WL 3824782, at *3 (D.Mass. Aug. 8, 2008) (quoting *Mo. Pac.*, 377 U.S. at 138, 84 S.Ct. 1142). Presumably in exchange for imposing "something close to strict liability upon originating and delivering carriers," *Rankin*, 336 F.3d at 9; *see also PNH Corp. v. Hullquist Corp.*, 843 F.2d 586, 589 (1st Cir.1988), the Carmack Amendment limits recovery to actual damages, *see* 49 U.S.C. § 14706(a)(1); *Rankin*, 336 F.3d at 16.

■ "It is accepted ... that the principal purpose of the [Carmack] Amendment was to achieve national uniformity in the liability assigned to carriers." *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 504 (1st Cir.1997). After discussing the United States Supreme Court's decision in *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), the court of appeals in *Rini* went on to explain:

> The preemptive effect of the Carmack Amendment over state law governing damages for the loss or damage of goods has been reiterated by the Supreme Court in many cases and is well established. *See, e.g., Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936) (claim of negligence for failure to deliver a film on time is preempted); *Charleston & Western Carolina Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 35 S.Ct. 715, 59 L.Ed. 1137 (1915) (state statute

---

**5.** "Shipper" is the term of art that denotes a person whose goods are transported by a carrier. See 49 U.S.C. § 13102(13).

imposing a penalty for failure to pay claims to a shipper within 40 days is preempted).

104 F.3d at 504 (parallel citations omitted). In other words, *Rini* stands for the proposition that the Carmack Amendment impliedly preempts state regulations related to damages for the loss or destruction of property during the course of interstate shipment.

 Under the doctrine of implied preemption, "Congress may implicitly preempt state law by creating a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir.2008) (quoting *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996); citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)) (internal quotation marks and brackets omitted). Under the doctrine of express preemption, "Congress can include 'language in the federal statute that reveals an explicit congressional intent to pre-empt state law.'" *Fitzgerald*, 549 F.3d at 52 (quoting *Barnett Bank*, 517 U.S. at 31, 116 S.Ct. 1103).

 In addition to the implied preemptive effect of the Carmack Amendment, described above, the power of the states to regulate the interstate transportation of goods is also expressly constrained by the Interstate Commerce Commission Termination Act ("ICCTA"), which provides, in pertinent part:

> a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.[6]

49 U.S.C. § 14501(c)(1).[7]

Based on the foregoing, and as Judge Lindsay's opinion in *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F.Supp.2d 638 (N.D.Tex.2010) explains quite clearly, there are two potential theories of preemption available in this area of the law. The first is based on implied preemption and the Carmack Amendment. *See id.* at 641. The second is based on express preemption and the ICCTA. *See id.* at 641–42.

 If Robinson was a carrier rather than a broker, as Ameriswiss appears to contend, then Ameriswiss's negligence claim would certainly be barred by the implied preemptive effect of the Carmack Amendment. *See Noble v. Wheaton Van Lines*, Civ. No. 09–10564–GAO, 2010 WL 3245421, at *6 (D.Mass. Aug. 17, 2010) ("[w]ith limited exceptions, the Carmack Amendment provides the exclusive cause of action against a carrier for loss or damage to goods that occurred as a result of interstate transport") (citation omitted). Thus, Ameriswiss's argument that Robinson was a carrier would seem to undermine its argument that its negligence

---

**6.** For purposes of this provision, "[s]tate common law counts as an 'other provision having the force and effect of law.'" *Non Typical, Inc. v. Transglobal Logistics Grp. Inc.*, Nos. 10–C–1058, 11–C–0156, 2012 WL 1910076, at *2 (E.D.Wis. May 28, 2012) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n. 8, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)).

**7.** The ICCTA preemption provision "had been part of the Federal Aviation Administration Authority Act ('FAAAA') passed by Congress in 1994." *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F.Supp.2d 284, 285 (D.Md.2003) (citing 49 U.S.C. § 11501(h)(1); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F.Supp. 665, 668 (N.D.Ga.1997)).

claim against Robinson is not preempted. Be that as it may, the court need not determine whether Robinson was a carrier or a broker because even if Robinson was a broker, Ameriswiss's negligence claim and all three of MB Insurance's claims are impliedly preempted by the Carmack Amendment and expressly preempted by the ICCTA.

In *York v. Day Transfer Co.*, a shipper brought negligence claims against several defendants, including a transportation broker. *See* 525 F.Supp.2d 289, 293 (D.R.I. 2007). In the course of deciding that the plaintiff's common-law claims against the broker were impliedly preempted by the Carmack Amendment, Judge Smith explained:

> The principle purpose of the Carmack Amendment was "to achieve national uniformity in the liability assigned to carriers." *Rini*, 104 F.3d at 504; *see, e.g., New York, New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1953); *Atchison, Topeka & Santa Fe Ry. Co. v. Harold*, 241 U.S. 371, 378, 36 S.Ct. 665, 60 L.Ed. 1050 (1916). Through the enactment, "Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject." *Rini*, 104 F.3d at 504. The Carmack Amendment exists to provide "a measure of predictability for interstate carriers in the exposure to damages they face." *Gordon [v. United Van Lines, Inc.]*, 130 F.3d [282,] 287 [ (7th Cir. 1997) ]. To accomplish this goal, "the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods." *Smith v. United Parcel Serv. (UPS)*, 296 F.3d 1244, 1246 (11th Cir.2002).
>
> . . . .
>
> The Carmack Amendment, with few exceptions, "provide[s] the exclusive cause of action for loss or damage to goods arriving from the interstate transportation of those goods by a common carrier." *Harris v. Crown Moving*, No. 07–CV–126–JLQ, 2007 WL 1724299 at *2 (E.D.Wash. June 14, 2007); *Hall [v. N. Am. Van Lines, Inc.]*, 476 F.3d [683,] 688 [ (9th Cir.2007) ].

*York*, 525 F.Supp.2d at 297–98 (parallel citations omitted). Then, in response to an argument by the plaintiffs, Judge Smith ruled:

> [W]hile Plaintiffs allege Day to have been negligent in its engagement of Williams Moving to facilitate the movement of the Yorks' property, their attempt to circumvent the Carmack Amendment fails. The role played by Day clearly falls within the Carmack Amendment, particularly where the Amendment defines covered transportation services as being "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage, handling, packing, [and] unpacking."

*Id.* at 301 (quoting 49 U.S.C. § 13102(23)(B); citing *Glass v. Crimmins Transfer Co.*, 299 F.Supp.2d 878, 884 (C.D.Ill.2004)); *but see Chatelaine*, 737 F.Supp.2d at 641 (ruling that because defendant was broker rather than carrier, the Carmack Amendment did not apply, thus precluding the availability of implied preemption under that statute). Based on the persuasive reasoning of *York*, this court has little difficulty concluding that the claims stated in Count I of Ameriswiss's complaint and the claims stated in Counts I–III of MB Insurance's complaint are all impliedly preempted by the Carmack Amendment, notwithstanding Robinson's role as a broker.

However, even if those claims are not subject to implied preemption under the Carmack Amendment, they are expressly preempted by the ICCTA. In *Kashala v.*

*Mobility Services International, LLC,* in which the plaintiff brought a negligence claim against a transportation broker, Judge Hillman ruled that "any negligence claim against Mobility in its capacity as a broker is preempted by another section of the ICCTA, namely, 49 U.S.C. § 14501(b), (c) [sic]," Civ. No. 07–40107–TSH, 2009 WL 2144289, at *5 (D.Mass. May 12, 2009).[8]

District courts in other circuits have reached similar conclusions with respect to a variety of state common-law tort claims against brokers. In *Non Typical, Inc. v. Transglobal Logistics Group, Inc.,* after noting that "the [preemption] statute expressly lists brokers," Nos. 10–C–1058 & 11–C–0156, 2012 WL 1910076, at *3 (E.D.Wis. May 28, 2012), Judge Griesback granted judgment on the pleadings to a broker because the shipper's negligence claims were preempted by the ICCTA, *see id.* Judge Griesback is not alone. *See, e.g., Chatelaine,* 737 F.Supp.2d at 642–43 (granting broker's motion to dismiss claims for negligence and negligent hiring, based on express preemption); *Huntington Operating Corp. v. Sybonney Express, Inc.,* Civ. No. H–08–781, 2010 WL 1930087, at *3 (S.D.Tex. May 11, 2010) (granting broker's motion for summary judgment on shipper's claims for negligence and negligent misrepresentation, based on express preemption). Finally, in an opinion that is instructive but not precisely on point, Judge Davis granted a broker's motion to dismiss a motor carrier's tort claims against it, explaining that the "applicability [49 U.S.C. § 14501(c)(1) ] hinges on the subject matter and effect of each claim, rather than on the identity of the parties in the litigation." *Yellow Transp., Inc. v. DM Transp. Mgmt. Servs., Inc.,* No. Civ. A.2:06CV1517–LDD, 2006 WL 2871745, at

*3 (E.D.Pa. July 14, 2006). Here, of course, the subject matter of the litigation is the destruction of Ameriswiss's machines while they were being transported from one state to another. In sum, not only are the claims asserted in Ameriswiss's Count I and MB Insurance's Counts I–III impliedly preempted by the Cormack Amendment, those claims are expressly preempted by 49 U.S.C. § 14501(c)(1).

There is some authority that, at first glance, might appear to support Ameriswiss's position on the preemption issue, but careful scrutiny reveals that authority to be unavailing. In an order in a case in which he reached the merits of a shipper's state-law negligence claim against a transportation broker, Judge Matz wrote:

> The Carmack Amendment governs "motor carriers" and "freight forwarders." 49 U.S.C. §§ 14706(a) (1996). The statute absolutely preempts all state common law claims against such carriers and freight forwarders. *Hughes Aircraft Co. v. North American Van Lines, Inc.,* 970 F.2d 609, 613 (9th Cir.1992). However, the Carmack Amendment does not apply to brokers. *See, e.g. Professional Communications, Inc. v. Contract Freighters, Inc.,* 171 F.Supp.2d 546, 551 (D.Md.2001); *Independent Machinery,* 867 F.Supp. at 761; *Adelman v. Hub City Los Angeles Terminal,* 856 F.Supp. 1544, 1547–48 (N.D.Ala.1994). Consequently, most courts hold that brokers may be held liable under state tort or contract law in connection with shipments. *Intercargo Ins. Co. v. Burlington Northern Santa Fe Railroad,* 185 F.Supp.2d 1103, 1113–1115 (C.D.Ca. 2001) (applying California law to party that was neither a carrier nor a freight forwarder); *Professional Communications,* 171 F.Supp.2d at 551–52 (applying

---

**8.** Judge Hillman also noted that "[e]ven if 49 U.S.C. § 14501(b), (c) [sic] did not apply, the Carmack Amendment would preempt all state

and common law claims." *Kashala,* 2009 WL 2144289, at *5.

Florida and Maryland law of negligence to a motor carrier broker); *Independent Machinery*, 867 F.Supp. at 762 (applying state law to party that was neither a carrier nor a freight forwarder); *Adelman*, 856 F.Supp. at 1548–49 (same). *Chubb*, 243 F.Supp.2d at 1068–69 (footnotes omitted).

Here is the problem with Ameriswiss's reliance on *Chubb*. In *Chubb*, Judge Matz relied on the same rule that Judge Lindsay relied on in *Chatelaine*, *i.e.*, the Carmack Amendment does not impliedly preempt state-law claims brought against brokers because brokers are not covered by the Carmack Amendment. But, there is no indication in the *Chubb* order that the broker in that case ever argued, as Robinson does here, that the shipper's claim was expressly preempted by 49 U.S.C. § 14501(c)(1). The same holds true for *Intercargo*, *Professional Communications*, *Independent Machinery*, and *Adelman*. Thus, the conclusion that is most appropriately drawn from *Chubb* is not that "most courts hold that brokers may be held liable under state tort . . . law in connection with shipments," 243 F.Supp.2d at 1069, but, rather, that most courts hold that state tort claims against brokers are not impliedly preempted by the Carmack Amendment.

Robinson, however, unlike the brokers in *Chubb*, *Intercargo*, *Professional Communications*, *Independent Machinery*, and *Adelman*, is relying on the ICCTA and its express preemption provision. Because *Chubb* and the cases cited therein discuss only implied preemption under the Carmack Amendment, they run counter to Judge Smith's opinion in *York*, but do not stand for the proposition that 49 U.S.C. § 14501(c)(1) does not preempt state-law tort claims against transportation brokers. Thus, those opinions do nothing to erode the persuasive reasoning of *Kashala, Non Typical, Chatelaine*, and *Huntington* with regard to the preemptive effect of 49 U.S.C. § 14501(c)(1).

The court concludes by acknowledging that preemption does have a different effect on claims against motor carriers than it has on claims against the other entities listed in 49 U.S.C. § 14501(c)(1). When a state common-law claim against a motor carrier arising out of damage to cargo in interstate transportation is preempted, a plaintiff still has a claim against the carrier under the Carmack Amendment. But, because the Carmack Amendment creates a federal statutory remedy against motor carriers only, when a state common-law claim against a motor private carrier or a broker is preempted by 49 U.S.C. § 14501(c)(1), a plaintiff is left with no claim at all against a defendant who has successfully invoked preemption. While that may seem to be an anomalous result of the interplay between the ICCTA preemption provision and the Carmack Amendment, there is no good basis for arguing that Congress did not intend that result, given its interest in standardizing and simplifying the adjudication of claims arising in the context of interstate shipping. *See Rini*, 104 F.3d at 504. Moreover, the ICCTA preemption provision was enacted long after the Carmack Amendment, *see* Robert D. Moseley, Jr. & C. Fredric Marcinak, *Federal Preemption in Motor Carrier Selections Cases Against Brokers and Shippers*, 39 Transp. L.J. 77, 79 (2012), and, presumably, was enacted with the Carmack Amendment in mind. Finally, it is worth bearing in mind that a plaintiff that loses its common-law claim against an entity such as a broker is not denied an avenue for recovery; such a plaintiff still has its Carmack Act claim against the carrier.[9]

---

9. Here, for example, Ameriswiss is in line to

receive a default judgment against Midway on

To conclude, the claims stated in Count I of Ameriswiss's complaint and Counts I–III of MB Insurance's complaint are impliedly preempted by the Carmack Amendment and are expressly preempted by 49 U.S.C. § 14501(c)(1). For that reason, Robinson is entitled to judgment as a matter of law on all four of those claims.

## C. Breach of Contract

In its complaint, Ameriswiss makes the following factual allegations:

Prior to completion of the purchase [of the machines that were destroyed], Ameriswiss contacted [Robinson] to make arrangements to have the Machines shipped by truck from Morrison, Illinois to Ameriswiss's business location in Holderness, New Hampshire.

Based on its discussions with [Robinson], Ameriswiss hired [Robinson] to have the Machines shipped by truck from Morrison to Ameriswiss's business location in Holderness.

In turn, [Robinson] hired Midway to actually haul the Machines by truck from Morrison to Holderness.

Compl. ¶¶ 14–16. Based on those allegations, Ameriswiss asserts, in Count II, that Robinson is liable for breach of contract:

Pursuant to its agreement with Ameriswiss, [Robinson] was obligated to transport safely or to arrange for the safe transportation of the Machines from Morrison to Holderness.

In addition, pursuant to its agreement with Ameriswiss, [Robinson] was obligated to ensure that the transportation of the Machines from Morrison to Holderness was protected by appropriate insurance.

[Robinson] breached its agreement with Ameriswiss in that it failed to transport safely the Machines from Morrison to Holderness and it failed to ensure that the transportation of the Machines from Morrison to Holderness was protected by appropriate insurance.

Compl. ¶¶ 34–36. While styled as a claim for breach of contract, Ameriswiss's assertion that Robinson breached the parties' agreement by failing to safely transport the machines is best understood as a claim for breach of warranty, specifically, a warranty that Ameriswiss's machines would not be damaged in transit. That said, the court turns to each of the two theories of recovery advanced in Count II, the breach-of-warranty claim stated in paragraphs 34 and 36, for failure to safely transport the machines, and the claim stated in paragraphs 35 and 36, for failure to properly insure them.

### 1. Failure to Safely Transport

Robinson argues that it is entitled to summary judgment on Ameriswiss's claim that it breached the parties' agreement by failing to safely transport the machines because: (1) it agreed to do nothing more than arrange for a carrier to transport the machines; (2) it took all necessary precautions when doing so; and (3) "[n]othing in the record suggests Midway was not a duly qualified or competent . . . motor carrier [and that] there is [no] evidence that [it] knew or should have known of any fact to disqualify Midway from handling the load." Def.'s Mem. of Law (doc. no. 41–1), at 19. For its part, and notwithstanding its failure to identify factual disputes in the manner required by Local Rule 7.2(b)(2), Ameriswiss contends that Robinson is not

its claim under the Carmack Amendment. Ameriswiss's default judgment against Midway might be less lucrative than a recovery against Robinson in tort, and while such a result would be disadvantageous to Ameriswiss, the court cannot say that such a result runs counter to congressional intent, as expressed in the ICCTA preemption provision and the Carmack Amendment.

entitled to summary judgment due to the existence of a genuine issue of material fact.

 Under New Hampshire law, "[a] breach of contract occurs when there is a failure without legal excuse[ ] to perform any promise which forms the whole or part of a contract." *Lassonde v. Stanton,* 157 N.H. 582, 588, 956 A.2d 332 (2008) (quoting *Poland v. Twomey,* 156 N.H. 412, 415, 937 A.2d 934 (2007)). Of course, a necessary prerequisite for a breach-of-contract claim is a contract. "A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds." *Tessier v. Rockefeller,* 162 N.H. 324, 339, 33 A.3d 1118 (2011) (quoting *Durgin v. Pillsbury Lake Water Dist.,* 153 N.H. 818, 821, 903 A.2d 1003 (2006)).

Robinson argues that the only promise it made to Ameriswiss was that it would arrange for the transportation of its machines. Necessarily, it argues that it did not warrant their safe delivery. The complaint alleges no facts which, if proven at trial, would establish the existence of any such warranty in the agreement between Robinson and Ameriswiss.[10] As best the court can tell from Ameriswiss's memorandum of law, it argues that summary judgment is precluded by factual disputes concerning: (1) its knowledge (or lack thereof) that Robinson was a broker rather than a carrier; and (2) its belief that the phrase "all inclusive" in the e-mail from Dunlop to Ms. Luscher was a warranty of safe delivery. As Ameriswiss argues:

> [W]hile C.H. Robinson may be clear in its understanding of the transaction, Ameriswiss could reasonably have understood that "all inclusive" meant something entirely different.
>
> Here, Ameriswiss's view of the terms of the agreement find support in the

facts discovered to date. While C.H. Robinson may have set forth facts in support of its myopic view of the agreement, the facts are plainly disputed. Thus, summary judgment is not appropriate.

Pl.'s Mem. of Law (doc. no. 49–1), at 20.

 Robinson is entitled to judgment as a matter of law on the breach-of-warranty claim. Ameriswiss takes the position that the entire agreement between the parties is contained in the email from Dunlop to Ms. Luscher. According to Ameriswiss: "the Court need look no further than Mr. Dunlop's email to … Luscher setting forth the scope of the agreement between Ameriswiss and C.H. Robinson." Pl.'s Mem. of Law (doc. no. 49–1), at 13; *see also id.* at 19 ("the actual agreement between C.H. Robinson and Ameriswiss is simple to repeat—'$2,600, all inclusive.' ").

Without reference to any evidence of record or any legal authority, Ameriswiss defines "all inclusive" to mean "the pick up of the shipment at [its] point of origin, delivering the shipment to [its] destination, and covering the shipment for loss or damage." Pl.'s Mem. of Law (doc. no. 49–1), at 13. But, Ameriswiss does not allege or argue that anyone from Robinson made an oral promise to warrant the safety of the delivery and has not produced evidence of any such oral promise. Thus, the question before the court, to be resolved as a matter of law, is this: do the two words "all inclusive" communicate a promise by Robinson to warrant the safe delivery of Ameriswiss's machines? They do not. Moreover, because the question before the court is limited to construing the language of a writing that, according to Ameriswiss itself, establishes the full scope of the parties' agreement, Ameriswiss's belief that

---

10. Thus, it is difficult to see how Ameriswiss's breach-of-warranty claim could have survived a motion to dismiss for failure to state a claim

upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

the agreement included a warranty is irrelevant. A valid contract requires a meeting of the minds, *see Tessier,* 162 N.H. at 339, and Ameriswiss has produced no evidence that anyone at Robinson shared a belief that the term "all inclusive" included a warranty of safe delivery. Because Robinson did not warrant the safe delivery of Ameriswiss's machines, Midway's failure to safely deliver them did not result in a breach of the contract between Robinson and Ameriswiss based on a breach-of-warranty theory.

### 2. Failure to Insure

Ameriswiss also asserts in Count II that Robinson "breached its agreement with Ameriswiss in that it ... failed to ensure that the transportation of the Machines from Morrison to Holderness was protected by appropriate insurance." Compl. ¶ 36. The complaint, however, alleges no facts concerning any promise by Robinson to ensure the procurement of insurance in an amount satisfactory to Ameriswiss. Perhaps for that reason, Robinson does not appear to address the insurance-coverage theory in its motion for summary judgment.

Under most circumstances, the court would be hesitant to grant summary judgment to a party that does not specifically request it. But here, Ameriswiss cannot possibly prevail on its claim that Robinson breached the parties' agreement by failing to ensure the provision of insurance coverage satisfactory to Ameriswiss. For starters, as with the breach-of-warranty claim, the claim stated in paragraphs 35 and 36 of Ameriswiss's complaint appears eminently susceptible to dismissal for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The complaint nowhere alleges any facts which, if proven, would establish that Robinson agreed to make sure that there was adequate insurance in place to protect Ameriswiss's interest in its machines.

Moving to the summary-judgment record, Ameriswiss appears to hang its hat on: (1) the words "all inclusive" in the e-mail from Dunlop to Ms. Luscher; (2) a request from Ameriswiss's Paul Luscher for insurance coverage in the amount of $300,000; and (3) evidence from Robinson's expert concerning what Dunlop told Mr. Luscher about the insurance coverage that was in place. None of that creates a triable issue concerning the existence of a promise by Robinson to provide, procure, or guarantee insurance coverage.

First, as a matter of law, the two words "all inclusive" do not establish a promise by Robinson to provide insurance coverage for Ameriswiss's cargo in any amount, much less whatever amount Ameriswiss might deem to be "appropriate." Second, Mr. Luscher testified that he asked Robinson to provide insurance coverage in the amount of $300,000, *see* Pl.'s Mem. of Law, Luscher Dep. (doc. no. 49–2), at 89, but he also testified that Dunlop told him that Robinson did not provide coverage for used machines, *see id.* at 89, 100. Thus, Mr. Luscher's request for insurance is not evidence that Robinson agreed to provide it. Third, Ameriswiss's reliance on Robinson's expert's testimony that Dunlop "told Mr. Luscher that there was insurance in place," Pl.'s Mem. of Law (doc. no. 49–1), is entirely misplaced. The expert was unable to say when Dunlop made that statement, *see* Pl.'s Obj., Ex. 2, Wentzell Dep. (doc. no. 49–2), at 114, which makes the statement worthless as evidence that Robinson promised to provide insurance, as a term of its agreement with Ameriswiss. Because Ameriswiss has produced no evidence that Robinson ever agreed to provide or procure insurance coverage for the machines Midway transported, Robinson is entitled to judgment as a matter of law on the second theory on which Ameriswiss bases its claim for breach of contract.

### D. Remaining Issues

Several loose ends remain to be tied up. First, because Robinson is entitled to judgment as a matter of law on all of the claims asserted by Ameriswiss and MB Insurance, there is no need to address Robinson's request for summary judgment that its liability is limited to the amount Ameriswiss paid for the machines that were destroyed. Second, because Robinson is not liable to Ameriswiss, Robinson's cross claim against Midway for indemnification is dismissed. Third, Robinson has moved to strike portions of Ameriswiss's objection to summary judgment, but given the court's favorable ruling on Robinson's motion for summary judgment, its motion to strike is denied as moot.

### Conclusion

For the reasons given above, Robinson's motion for summary judgment, document no. 41, is granted. As a result, its motion in limine, document no. 50, and its two motions to strike, document nos. 54 and 55, are all denied as moot. The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.