**ALPINE FRESH, INC., Plaintiff,**

v.

**JALA TRUCKING CORP. and Super Logistics, L.L.C., Defendants.**

**Civil No.: 15-3663 (KSH) (CLW)**

United States District Court,
D. New Jersey.

Filed March 31, 2016

David W. Fassett, Arseneault & Fassett, LLP, Chatham, NJ, Gregory Adam Brown, Mccarron & Diess, Melville, NY, for Plaintiff.

Thomas C. Martin, William D. Bierman, Price Meese Shulman & D'Arminio, P.C., Woodcliff Lake, NJ, for Defendants.

## OPINION

Katharine S. Hayden, United States District Judge.

This matter involves the noble vegetable asparagus and comes before the Court via two distinct motions. The first is a motion to dismiss certain claims pursuant to *Rule* 12(b)(6) brought by defendant Super Logistics, LLC ("Super Logistics") (D.E. 10), which seeks to dispose of counts three, six and seven and argues that they are preempted by federal law. The second is a motion by plaintiff Alpine Fresh, Inc. ("Alpine") for default judgment brought against a second defendant, Jala Trucking Corp. ("Jala"). (D.E. 15.) Alpine filed its complaint on June 1, 2015, and properly served both defendants. (D.E. 4, 5.) Jala has not filed any responsive documents in this matter.

### I. Background

The complaint (D.E. 1 ("Compl.")) alleges that Alpine engaged Super Logistics to act as a broker and locate a common carrier to handle the transportation of produce from Alpine's storage facility in Texas to a customer's locations in Maryland and New Jersey. (Compl. ¶ 6.) Super Logistics arranged for Jala to transport the produce in question at a temperature between 34 and 36 degrees Fahrenheit, with a delivery to Maryland scheduled for August 10, 2014, and a delivery to New Jersey scheduled for August 11, 2014. (Compl. ¶¶ 7-10.) These requirements were reflected on the bills of landing. (Compl. ¶ 10.) On August 9, 2014, the truck transporting the produce broke down and was taken to be repaired.

(Compl. ¶ 13.) Although Jala and Super Logistics assured Alpine that the refrigeration unit on the truck was running at 36 degrees throughout the repair process, the produce was rejected upon delivery in Maryland because the internal temperature recorders revealed that conditions inside the truck had been below 30 degrees for most of the transit time. (Compl. ¶¶ 14-17.) Alpine instructed Super Logistics not to attempt delivery to New Jersey. (Compl. ¶ 18.) Alpine asserts that Super Logistics promised to pay for any damages that were not recouped from Jala. (Compl. ¶ 19.) Alpine filed claims with Super Logistics and Jala's insurer, but these claims have not been paid. (Compl. ¶ 20.) Alpine asserts that the fair market value of the produce at the time of delivery was $ 78,750. (Compl. ¶ 23.)

Alpine filed a seven-count complaint on June 1, 2015, alleging breach of contract against Super Logistics (count one) and against Jala (count two), breach of bailment against Super Logistics (count three) and against Jala (count four), conversion against Jala (count five), negligence in failing to complete the delivery with reasonable care against both Super Logistics and Jala (count six), and negligence in failing to locate a common carrier with proper care against Super Logistics (count seven). (Compl. ¶¶ 24-67.) Alpine properly served both defendants (D.E. 4, 5) and requested default as to Jala on July 7, 2015.[1] The clerk of the court recorded an entry of default for failure to plead or otherwise defend onto the docket the next day. (D.E. 6.)

Super Logistics filed an answer on July 9, 2015, admitting only that certain goods were carried by an entity other than Super Logistics in interstate commerce in con-

---

1. Alpine served Jala on June 12, 2015, making Jala's answer due on July 3, 2015; Super Logistics was not served until June 18, 2015, and therefore not required to answer until July 9, 2015. (D.E. 4, 5.)

nection with freight brokerage. (D.E. 9 ("SL Answer") at 1.) Super Logistics also asserted two cross-claims against Jala: (1) indemnification from or to be held harmless by Jala for all damages, including attorneys' fees, if found liable to Alpine; and (2) contribution from Jala toward payment of any judgment in favor of Alpine. (SL Answer at 4.) On the same day, Super Logistics filed the instant motion to dismiss counts 3 (breach of bailment), 6 (negligence as to transportation), and 7 (negligence as to locating a common carrier). (D.E. 10.) The Court decides these motions on the papers without oral argument. *Fed. R. Civ. P.* 78(b).

## II. Super Logistics's Motion to Dismiss

■ *Federal Rule of Civil Procedure* 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must do more than allege the plaintiff's entitlement to relief; it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). However, "detailed pleading is not generally required." *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016). Contentions that a plaintiff's claims are preempted by federal law, "directed at the face of the complaint, are appropriate for consideration under the standards for a *Rule* 12(b)(6) motion to dismiss." *Clements v. Sanofi–Aventis, U.S., Inc.,* 111 F.Supp.3d 586, 591 (D.N.J.2015) (McNulty, J.).

Super Logistics argues that Alpine fails to assert cognizable causes of action for the claims of negligence and breach of bailment because federal law preempts these claims. Specifically, Super Logistics asserts that the Carmack Amendment, 49 U.S.C. § 14706 (the "Carmack Amendment"), the Interstate Commerce Commission Termination Act, 14501(b) (the "ICCTA"), and the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c) (the "FAAAA"), all bar these claims.

In relevant part, the Carmack Amendment provides that

> [a] carrier providing transportation or service ... shall issue a receipt or bill of landing for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of landing. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States ....

49 U.S.C. § 14706(a)(1). The ICCTA and FAAAA bar states from regulating freight forwarders/brokers and motor carriers of property, respectively. Specifically, the ICCTA provides that a state may not "enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501(b). The FAAAA provides that a state may not "enact or enforce a law, regulation, or other provision having the force and effect of law relating to price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with

respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

 Although the parties have not briefed the issue in detail, the Third Circuit has plainly expressed that

> [t]he Supreme Court has identified three types of preemption: express preemption, field preemption, and implied conflict preemption. The first, express preemption, exists when Congress includes in a statute explicit language stating an intent to preempt conflicting state law. The second, field preemption, occurs when a state law impinges upon a field reserved for federal regulation." This form of preemption exists "either ... [where] the nature of the regulated subject matter permits no other conclusion, or [where] the Congress has unmistakingly so ordained. Lastly, ... implied conflict preemption exists when, under the circumstances of [a] particular case, [the state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Deweese v. Nat'l R.R. Passenger Corp. (Amtrak),* 590 F.3d 239, 245 (3d Cir.2009) (internal quotation marks and citations omitted).

For the preemptive effect of the Carmack Amendment, and the ICCTA, Super Logistics relies primarily on *Ameriswiss Technology, LLC v. Midway Line of Illinois, Inc.,* 888 F.Supp.2d 197 (D.N.H. 2012), in which similar claims were preempted. In *Ameriswiss,* the plaintiff's machinery was destroyed in an accident while being trucked from Illinois to New Hampshire by a transportation company (Midway) that had been hired by another company (Robinson), which the plaintiff had engaged to arrange for the transportation of the machines. *Id.* at 200. The plaintiff and its insurer brought claims for negligence and breach of bailment in the District of New Hampshire against both Robinson and Midway.[2] *Id.* Magistrate Judge McCafferty reviewed the case law examining the Carmack Amendment and the ICCTA and concluded that the claims against the company that organized the transport were preempted. *Id.* at 205–06. If the company acted as a carrier, the claims were "barred by the implied preemptive effect of the Carmack Amendment," and if the company acted as a broker, the claims were both "impliedly preempted by the Carmack Amendment and expressly preempted by the ICCTA."[3] *Id.* Although Super Logistics does not cite the case, a respected district judge in this district has held that the Carmack Amend-

---

**2.** Ameriswiss asserted that Robinson breached a duty to use reasonable care in selecting the transportation company (Midway). *Id.* at 202. In a consolidated action, Ameriswiss's insurer brought claims for negligence in transportation of the product, alleging that Robinson was responsible for the acts of its contractors as a dispatcher, and breached the duty of care for a bailment. *Id.* at 200, 202. These claims mirror Alpine's claims in this case.

**3.** The Carmack Amendment portion of this holding relied primarily on *Rini v. United Van Lines Inc.,* 104 F.3d 502, 504 (1st Cir.1997), which "stands for the proposition that the Carmack Amendment impliedly preempts state regulations related to damages for the loss or destruction of property during the course of interstate shipment." *Id.* at 204 (noting *Rini's* statement that the purpose of the Carmack Amendment was to achieve national uniformity in liability assigned to carriers). For the preemptive effect of the ICCTA, Magistrate Judge McCafferty relied on several district court cases throughout the country. *Id.* at 205–06 (citing *Kashala v. Mobility Srvs. Int'l, LLC,* 2009 WL 2144289, at *5 (D.Mass. May 12, 2009); *Non Typical, Inc. v. Transglobal Logistics Grp., Inc.,* 2012 WL 1910076, at *3 (E.D.Wis. May 28, 2012); *Chatelaine, Inc. v. Twin Modal, Inc.,* 737 F.Supp.2d 638 (N.D.Tex.2010); *Huntington Operating Corp. v. Sybonney Express, Inc.,* 2010 WL 1930087, at *3 (S.D.Tex. May 11, 2010)).

ment preempts all state law causes of action alleging liability for lost or damaged property against interstate carriers and that the ICCTA expressly preempts state law claims as to brokers with respect to motor carrier arrangements. *Phoenix Ins. Co. Ltd. v. Norfolk S. R.R. Corp.*, 2014 WL 2008958, at *16–17 (D.N.J. May 16, 2014) (Debevois, J.) (in railway context).

Finally, with respect to the FAAAA, Super Logistics cites *Marx Companies LLC v. Western Trans Logistics, Inc.*, 2015 WL 260914, at *4 (D.N.J. Jan 21, 2015) (Pisano, J.), in which the court held claims for losses incurred in transporting truckloads of frozen boneless beef from California to Missouri were preempted.

Alpine asserts that these arguments are wholly irrelevant because the freight involved was asparagus, to which, it claims, Title 49 is inapplicable. Specifically, Alpine highlights that 49 U.S.C. § 13506 contains miscellaneous motor carrier transportation exemptions, over which "[n]either the Secretary [of Transportation] nor the [Surface Transportation] Board has jurisdiction," including "transportation by motor vehicle of . . . agricultural or horticultural commodities (other than manufactured products thereof)." 49 U.S.C. § 13506 (a)(6)(B); *see also* 49 U.S.C. § 13102(1), (20). Further, Administrative Ruling No. 119[4] specifically enumerates commodities exempt from regulation by the Federal Motor Carrier Safety Administration ("FMCSA"), and includes asparagus under "roots." Accordingly, Alpine argues that any federal statutes overseen by the FMCSA and Surface Transportation Board—that is, all of the provisions of Title 49—are inapplicable to this case and that the cases cited by Super Logistics involving non-exempt commodities are not instructive.

■ The Court agrees with Alpine that the exemption for asparagus precludes preemption by the Carmack Amendment in this case. The preemptive effect of the Carmack Amendment is based upon Congress's desire to achieve "uniformity of obligation [and] liability" and the fact that "[a]lmost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505, 33 S.Ct. 148, 57 L.Ed. 314 (1913). Where a particular product is exempt from that scheme of regulation, this reasoning does not apply. An older case, *Taiyo Americas, Inc. v. Honey Transport, Inc.*, 464 F.Supp. 1249 (S.D.New York 1979) contains a concise explanation for why exemption from the federal regulation has this effect:

> Had Congress so wished, it could have written in an exception to the exemption, so that motor carriers exempt from other regulations would nevertheless be covered by the Carmack Amendment. Congress made no such exception. Rather, while permitting farmers to use non-regulated truckers at lower rates, Congress relegated farmers to state law remedies when goods being transported by truck are damaged or lost. Farmers thus forego the benefits of regulation at the same time that they are relieved of its costs.

*Id.* at 1252; *cf. Polesuk v. CBR Sys.*, 2006 WL 2796789, at *7–9 (S.D.N.Y. Sept. 29, 2006) (discussing Congressional intent of Carmack Amendment to promote nationally uniform policy as to shipment of *regulated* property). Accordingly, the Carmack Amendment's "implied" preemption nei-

---

4. Federal Motor Carrier Safety Administration Admin. Ruling 119 at *17 (available at http://www.fmcsa.dot.gov/registration/administrative-ruling-119).

ther occupies the field nor conflicts with state law with respect to asparagus.[5]

■ This reasoning does not apply with equal force to the ICCTA and FAAAA, which contain express preemptive language. 49 U.S.C. § 14501(b) expressly provides that "no State , .. shall enact or enforce" any law or. provision having the effect of law "relating to ... intrastate service of any freight forwarder or broker." Subsection (c) contains much the same language: "a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ..., broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The parties have not cited, and the Court has not located through independent research, any mandatory authority with respect to the preemptive effect of §´14501 on state or common law claims related to products that are exempt from the jurisdiction of the Secretary and the Board under 49 U.S.C. § 13506. However, looking to the plain language of the statute, the Court concludes that the express prohibition against state regulation of "intrastate services of any ... broker," and "related to a price, route or service of any ... broker," precludes the claims at issue here against Super Logistics, which Alpine has alleged acted as a broker. (Compl. ¶ 6.) *See Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296, 306 (4th Cir. 2013) (noting that Congress borrowed the preemption language of 49 U.S.C.

§ 14501(1) from the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA"), and intended "related to" to incorporate the Supreme Court's prior broad interpretation of the ADA preemption provision); *ASARCO LLC v. England Logistics Inc.*, 71 F.Supp.3d 990, 1004–05 (D.Ariz.2014) (finding negligence claim for lost shipment of copper anodes to be preempted because a finding of liability would have an effect on rates and services, and stating: "At bottom,. courts have recognized that § 14501 'broadly' pre-empts state law claims that would regulate interstate transportation of goods."). State common law qualifies as an "other provision having the force and effect of law." *Ameriswiss*, 888 F.Supp.2d at 204 n. 6 (internal quotation marks omitted). The common law claims of negligence and breach of bailment that Super Logistics seeks to dismiss are related to the intrastate transportation of goods, and more specifically to Super Logistics's "intrastate services" as a broker. 49 U.S.C. § 14501(b)(1). Accordingly, the motion to dismiss counts three, six, and seven as to Super Logistics on grounds of preemption is granted.

### III. Alpine's Motion for Default Judgment

■ In evaluating a motion for default judgment, the Court must first determine whether the clerk of the court properly entered default. *Fed. R. Civ. P.* 55(a). As Jala has failed to enter an appearance, file an answer, or in any way respond to

**5.** Super Logistics's argument that the word "asparagus" is not found within the four corners of the complaint is not persuasive. First, Super Logistics is aware of the product for which it arranged shipping. The purpose of looking only to the pleadings in a motion to dismiss is to ensure that the plaintiff has notice of the evidence that will be used against it, but that lack of notice "is dissipated '[w]here plaintiff has actual notice[.]' " *In*

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996)). Here, both parties have actual notice of the product that forms the basis of these claims. Second, the term "produce" is used in the complaint and can plausibly be read as an "agricultural or horticultural commod[y]," which is exempt under 49 U.S.C. § 13506. (*See, e.g.,* Compl. ¶ 6.)

the complaint, the entry of default is proper in this case.

However, even when default was properly entered, a plaintiff "is not entitled to the entry of default judgment as of right, and the entry of such a judgment is left primarily to the discretion of the district court." *Ramada Worldwide Inc. v. Abel Lodging, LLC*, 2014 WL 5361914, at *1 (D.N.J. Oct. 21, 2014) (Linares, J.); *see, e.g., Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir.1984). Where the motion for default judgment is made as to only one defendant in a multi-defendant case, "the preferred practice is for the court to withhold granting default judgment until the action is resolved on its merits against non-defaulting defendants: if plaintiff loses on [the] merits, the complaint should then be dismissed against both defaulting and non-defaulting defendants." *Animal Sci. Products, Inc. v. China Nat. Metals & Minerals Imp. & Exp. Corp.*, 596 F.Supp.2d 842, 849 (D.N.J.2008) (Brown, J.) (citing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)); *see also* Charles A. Wright et. al., 10A Fed. Prac. & Proc. Civ. § 2690 (3d ed. 2015) ("judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted"). To avoid potential absurdities that could result from inconsistent judgments, this practice is strictly applied where the liability is joint and several. *See, e.g., Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir.1986) (citing *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1511–12 (11th Cir. 1984) (finding default judgment "incongruous and unfair" where defendants were jointly and severally liable)); *Eteam, Inc. v. Hilton Worldwide Holdings, Inc.*, 2016 WL 54676 (D.N.J. Jan. 5, 2016) (Walls, J.)

(declining to grant default judgment against one of two defendant where it would "create the risk of potentially inconsistent judgments").

Here, Alpine requests default judgment as to only one defendant but asserts that both Jala and Super Logistics are "jointly and severally liable for the principal amount of $78,750.00 plus interest, costs," and attorneys' fees. (Compl. at 8.) Additionally, Super Logistics has asserted cross-claims against Jala for contribution and indemnification. The Court applies the preferred practice in this district and declines to grant default judgment in this action until it is either resolved on the merits or all defendants have defaulted.

### IV. Conclusion

For the reasons stated above, the Court grants the motion to dismiss counts three, six, and seven as to Super Logistics as preempted by 49 U.S.C. § 14501 and denies the motion for default judgment. An appropriate order will be entered.